## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| (1) APMC, INC., d/b/a A PLUS MEDICAL OF OKLAHOMA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| (1) MICHAEL FOGARTY, Chief Executive Officer of the Oklahoma Health Care Authority; (2) LYNN MITCHELL, M.D., State Medicaid Director; (3) KELLY SHROPSHIRE, Auditor for the Oklahoma Health Care Authority, sued in their official and individual capacities, | ) ) ) ) ) ) ) ) ) | Case No. |
| Defendants. | ) ) | |

## COMPLAINT

For its Complaint under 42 U.S.C. § 1983, Plaintiff, APMC, Inc., d/b/a A Plus Medical of Oklahoma ("A Plus"), a provider of pediatric diabetic supplies, alleges that Defendants, officials for the Oklahoma Health Care Authority ("the OHCA"), acting under color of state law have deprived A Plus of its rights, privileges, and immunities under federal law, specifically the United States Constitution and the Medicaid Act, 42 U.S.C. § 1396. These violations arise from Defendants' (1) withholding of Medicaid payment owed to A Plus, (2) recoupment of Medicaid funds owed to A Plus, and (3) termination of A Plus' contract in retaliation for A Plus' insistence on compliance with federal law. Additionally, Defendants have violated state law through their defamation of

and interference with the business of A Plus; fraudulent concealment; and wrongful and bad faith termination of A Plus' contract. A Plus further alleges as follows:

## PARTIES

1.      Plaintiff, A Plus, is an Oklahoma corporation that has operated under contract with the OHCA since 1999 to provide durable medical equipment and medical supplies to Oklahoma Medicaid recipients. A Plus specializes in providing pediatric diabetic supplies.

2.      The OHCA and Defendants have a policy and practice of withholding and recouping Medicaid payment owed to A Plus and terminating A Plus' Contract, all without justification and in violation of federal law.

3.      Defendant Michael Fogarty ("Fogarty") is sued in his official capacity as the Chief Executive Officer of the OHCA and in his individual capacity. As Chief Executive Officer of the OHCA, Fogarty is responsible for ensuring Oklahoma's Medicaid program complies with federal and state law and regulations. Fogarty directly and indirectly controls, personally participated in, and is responsible for the policies and practices of the OHCA and at all relevant times has acted under color of state law.

4.      Defendant Lynn Mitchell, M.D. ("Mitchell") is sued in her official capacity as the State Medicaid Director for the OHCA and in her individual capacity. Mitchell directly and indirectly controls, personally participated in, and is responsible for the policies and practices of the OHCA and at all relevant times has acted under color of state law.

2

5.     Defendant Kelly Shropshire ("Shropshire") is sued in his official capacity as an auditor for the OHCA and in his individual capacity.   Shropshire directly and indirectly controls, personally participated in, and is responsible for the policies and practices of the OHCA and at all relevant times has acted under color of state law.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over A Plus' federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3).   A Plus' action is brought pursuant to 42 U.S.C. § 1983 to redress deprivation of its federal rights under the United States Constitution and the Medicaid Act, 42 U.S.C. § 1396.   This Court has supplemental jurisdiction over A Plus' state law claims pursuant to 28 U.S.C. § 1367.

7.     A Plus has Constitutional rights to procedural and substantive due process of law and equal protection of the law under the Fourteenth Amendment, to be free from governmental taking without just compensation under the Fifth Amendment, and to be free from impairment of its obligations of contract under Article I, § 10.

8.     A Plus also has federal statutory rights as a Medicaid provider to payment for its services under 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396a(a)(32), and to be free from withholding of Medicaid payment under 42 C.F.R. § 455.23 absent "reliable evidence" of fraud; and to fair process under 42 U.S.C. §§ 1396a(a)(3) and 1396a(a)(37), as well as five days notice prior to withholding of Medicaid funds under 42 C.F.R. § 455.23.

9.    Defendants are sued in their official capacity for prospective equitable relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908), and thus do not possess sovereign immunity from suit under the Eleventh Amendment.

10.    Defendants also are sued in their individual capacities for actions taken outside the scope of their authority.  The Eleventh Amendment does not apply at all to A Plus' action against Defendants in their individual capacities.  Neither do Defendants possess federal common law immunity from suit for their actions in their individual capacities since Defendants acted outside the scope of their authority and/or violated mandatory provisions of federal law.

11.    A Plus need not exhaust any administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983.  *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 522 (1990).

12.    Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b).  The events giving rise to this claim occurred in the Western District of Oklahoma.

## **BACKGROUND**

13.    Congress created Medicaid in 1965 to provide certain medical and health services to the financially needy.  Medicaid is a cooperative state-federal program that is operated in compliance with state plans that must satisfy specific minimum federal requirements.  Each year a state must submit to the federal government its plan to distribute Medicaid funds it receives from the federal government.  After the federal

government approves a state's Medicaid plan, the state is eligible to receive federal matching funds for expenditures made pursuant to the state plan.

14.    States that choose to participate in the Medicaid program must designate a single state agency to administer the program. The OHCA is the designated Medicaid agency for the State of Oklahoma. *See* 63 Okla. St. § 5003.

15.    A state need not participate in the Medicaid program, but once it chooses to participate, it must comply with all federal requirements. *See* 42 U.S.C. § 1396a(a)(1). A state that does not comply with federal Medicaid requirements is subject to termination of federal Medicaid assistance.

16.    A state Medicaid agency may contract with medical providers to provide services and supplies to Medicaid recipients in exchange for reimbursement. Federal law mandates that a state Medicaid program make proper and timely payment for Medicaid services. *See* 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), 1396a(a)(32), and 1396a(a)(37). Additionally, federal regulation requires that the state Medicaid agency receive "reliable evidence" of fraud or willful misrepresentation prior to withholding Medicaid payment from a provider under 42 C.F.R. § 455.23. Finally, federal law mandates that a state Medicaid program provide a review process for proper and efficient Medicaid payment, a fair hearing when a claim for payment is denied or is not acted upon with reasonable promptness, and five days notice to a provider prior to withholding payment. *See* 42 U.S.C. § 1396a(a)(3); 42 U.S.C. §1396a(a)(37); 42 C.F.R. § 455.23.

17.     A Plus entered into an annual contract with the OHCA to supply durable medical equipment or medical supplies to Oklahoma Medicaid recipients.  The relevant contract term was from January 1, 2007 through December 31, 2007 (the "Contract").

18.     Pursuant to the Contract, A Plus received prescriptions to provide diabetic supplies to Medicaid recipients.  A Plus accessed the OHCA computer system to ensure each patient's eligibility to receive supplies under Medicaid and then submitted the prescription to the OHCA.  Upon receiving prior authorization from the OHCA, A Plus shipped the prescribed diabetic supplies to the patient and submitted a claim to OHCA for reimbursement.  Between 1999 and August 2007, A Plus operated under contract with the OHCA without incident.

### Withholding

19.     In September 2007, without the prior notice required by 42 C.F.R. § 455.23, Defendants began manually to withhold reimbursement checks payable to A Plus.  The reimbursements owed A Plus date back to September 2007 and total in excess of $200,000 to date.  The funds being held by Defendants include not only Medicaid funds owed to A Plus, but also non-Medicaid funds, including funds owed by Medicare and secondary payors.

20.     Not until November 29, 2007, did Defendants notify A Plus that they were withholding payment under 42 C.F.R. § 455.23, on the pretext of fraud by A Plus.  Defendants later explained that its suspicion of fraud was based upon documents it obtained from A Plus on September 11, 2007, for 16 Medicaid recipients, and by subpoena on October 1, 2007, which resulted in a production of files for a one-year

billing period.  Based upon these documents produced, Defendants claim that A Plus billed for supplies that it did not deliver and have asked for every penny paid to A Plus since 2004.

21.    Defendants' basis for withholding payment to A Plus is unfounded as there is no evidence of fraud or willful misrepresentation, let alone "reliable evidence" required by 42 C.F.R. § 455.23.  A review of all relevant documents reveals that A Plus in fact *was not* paid for any supplies that it did not deliver, and the only supplies A Plus did not deliver were those that could not be processed for delivery due to the fact Defendants locked A Plus out of the processing system on November 20, 2007, without prior notice of any kind.

22.    Moreover, an independent auditor and certified fraud examiner has reviewed the documents provided to Defendants, along with all other relevant records of A Plus, and determined that A Plus has properly billed and sought reimbursement for its services and that there is not the slightest evidence of any impropriety by A Plus.  The auditor conducted several exhaustive analyses and reached the same conclusion with each – Defendants actions against A Plus are completely unfounded.  The auditor's final report and the documents upon which the report is based have been provided to the OHCA.

23.    Defendants' process in withholding payment from A Plus also was fundamentally flawed.  As an initial matter, and as noted above, Defendants did not even provide A Plus with the requisite notice under 42 C.F.R. § 455.23 prior to withholding A Plus' payments.  Had Defendants complied with the notice provisions required by federal law, A Plus would have stopped purchasing and shipping diabetic supplies in an attempt

to mitigate its damages.  Rather, A Plus continued to ship diabetic supplies to Medicaid recipients, at a mounting loss.

24.    Defendants also arbitrarily changed the reimbursement rate for durable medical equipment without following the procedures outlined in the Medicaid statutes and without regard to the actual wholesale price of the goods that have to be purchased by providers.  In doing so, they have deprived durable medical equipment providers of the opportunity to give comment and input with respect to the new rates and have compromised their ability to purchase and provide life saving products to Medicaid recipients, in violation of 42 U.S.C. § 1396.

25.    Further, Defendants have failed in multiple respects to follow their own process and Oklahoma law in reviewing and/or auditing A Plus with respect to A Plus' purported billing fraud/misrepresentation.  As an initial matter, the OHCA is not the proper entity to investigate Medicaid fraud, as that responsibility is vested in the Oklahoma Attorney General.  *See* 56 Okla. St. § 1003(B).  Although Defendants describe their investigation of A Plus as an informal utilization review, it is this review and the purported results thereof upon which Defendants support their charge of fraud.

26.    In addition to its exercise of improper authority in investigating A Plus, Defendants failed to follow their own procedures for utilization review or audit.  In conducting such a review or audit, the OHCA must examine provider records, develop an initial review report or draft audit containing preliminary findings, and provide for an informal reconsideration period in which the provider may supply relevant information to clear any misunderstandings and/or findings.  The OHCA must then provide a final audit

8

or review report and provide a right to a formal appeal if requested by the provider. *See* Okla. Admin. Code § 317:30-3-2.1(b). Defendants did none of this prior to withholding payment from A Plus.

27.    Rather, on or about September 11, 2007, Kelly Shropshire contacted A Plus and stated he was performing an informal utilization review as an educational exercise to familiarize A Plus with documents the OHCA may seek to review in the future. Shropshire specifically stated his visit was "not an audit or any such investigation." A Plus provided all the files and documentation Shropshire requested at that time for copying, which included information with respect to 16 Medicaid recipients. A Plus also provided Shropshire with a detailed explanation of how A Plus billed and shipped diabetic supplies. A Plus even put Shropshire in contact with a pediatric diabetic educator at the University of Oklahoma, who explained the pediatric diabetic delivery process to him.

28.    A little over two weeks later, on September 26, 2007, four representatives of the OHCA appeared at A Plus' office, carrying two copy machines. The OHCA representatives informed A Plus the visit was an extension of the prior utilization review visit. They demanded A Plus immediately turn over an overwhelming number of its files and documents. Due to its limited number of employees, immediate compliance with the OHCA's demand would have made basic operations at the small company impossible; A Plus was unable to suspend operations and provide all of the documentation demanded at that time. A Plus requested that the OHCA representatives provide A Plus with the initial review report of the documents A Plus already provided so that A Plus could address the

OHCA's concerns, as required by the OHCA's own regulations, and at the very least a list of the additional documents now being requested so that A Plus could provide the records with the least interruption to its business. OHCA representatives responded by threatening to get a "search warrant" and stated they were not required to follow any procedures, which are intended to protect the due process rights of entities like A Plus.

29.    On Friday, September 28, 2007, Defendants obtained, via the Oklahoma Attorney General's Office, service of a subpoena duces tecum on A Plus, requiring immediate production of the voluminous information the OHCA had demanded only two days earlier. A Plus personnel were told they would be arrested if they did not comply with the demand for production immediately. Counsel for A Plus arrived in time to reach an agreement with Assistant Attorney General Don Brown, who was not onsite with the investigators demanding the production of documents. The attorneys agreed to limit the scope of production under the subpoena to potentially relevant files and to a one-year time frame. A Plus complied with that agreement and produced the documents subpoenaed on Monday, October 1, 2007, the next business day.

**Termination**

30.    On October 25, 2007, less than a month after A Plus challenged the OHCA's strong-arm activity and produced the subpoenaed documents pursuant to agreement with Assistant Attorney General Don Brown, the OHCA gave A Plus notice of its intent to terminate A Plus' Contract for cause, effective November 20, 2007. Defendants informed A Plus it was terminating the Contract on the ground A Plus refused to comply with the OHCA's demand for the immediate production of documents on

10

September 26, 2007.  Defendants also cited as a ground for termination that their review of A Plus' medical records reflected A Plus billed for medical supplies that were not delivered, that A Plus improperly pre-billed on certain supplies, and that A Plus received inflated reimbursements for certain supplies.  The accusation in regard to charging inflated prices for supplies is incorrect on its face based on the OHCA's own regulations in regard to pricing.  The documents A Plus has produced to the OHCA refuted the rest of the allegations.

31.    Termination of a Medicaid provider contract for cause requires the OHCA to give the provider an opportunity for pre-termination review, during which the provider may submit documents and written argument against termination.  *See* Okla. Admin. Code § 317:2-1-12(1)(B).  Further, the OHCA's for cause termination decision is subject to post-termination review.  *See* Okla. Admin. Code § 317:2-1-12(2).

32.    A Plus responded to Defendants' notice of termination in writing by detailed letter to Lynn Mitchell dated November 14, 2007, and referred the OHCA to the documents produced by A Plus reflecting no improper billing.  A Plus also provided the OHCA with additional documents at this time.

33.    On November 21, 2007, after little to no reconsideration, Lynn Mitchell informed A Plus OHCA would still terminate the Contract for cause, in reliance upon the same flawed reasoning given on October 25, 2007.  Defendants also gave A Plus a new termination date of December 15, 2007.  However, the Contract effectively was terminated on November 20, 2007, when Defendants locked A Plus out of the OHCA

computer system, denying A Plus the ability to check eligibility and submit claims for reimbursement.

34.    On December 20, 2007, the OHCA sent A Plus a letter renewing the Contract for three additional years, through January 31, 2011.

35.    However, on January 9, 2008, without honoring A Plus' right to post-termination review of the OHCA's for cause termination, Lynn Mitchell suddenly informed A Plus that the Contract was renewed in error and that the OHCA would terminate the Contract *without cause*, effective 60 days from notice, or March 9, 2008. The OHCA incorrectly and improperly claimed this termination of a new contract denied A Plus its previously demanded right to a hearing on the termination for cause of its prior contract.

36.    Defendants issued or caused to be issued to A Plus' patients disparaging and/or defamatory statements that A Plus no longer had a contract with the OHCA and that A Plus' patients would need to seek diabetic supplies elsewhere. As a result, A Plus' reputation with its patients and their health care providers has been sullied and A Plus has lost potential business. Others of A Plus' patients inquired with the alternative suppliers recommended by Defendants but were unable to find suppliers to meet their diabetic needs. As such, A Plus has been providing these patients with supplies on its own nickel. Further, suppliers have been told that A Plus' Contract was terminated, that A Plus could not afford to pay them for supplies, and that they should cease shipping to A Plus. As a result, suppliers have restricted the credit terms upon which they do business with A Plus, A Plus' reputation with suppliers has been sullied, and A Plus has lost potential business.

## Recoupment

37.     On January 7, 2008, two days prior to the relinquishment of the OHCA's for cause termination in favor of a no cause termination, Kelly Shropshire demanded that A Plus pay the OHCA close to one million dollars.  His stated basis for the demand was purported overpayment to A Plus dating back to 2004 for certain medical supplies - - transparent film, insulin syringes, and infusion sets.  The overpayments, he claimed, were due to "potential billing errors" relating to the quantity and price of medical supplies.  Mr. Shropshire attached to his letter a list of claims to which the purported overpayments applied.

38.     Defendants knew they did not have all documents for all of A Plus' Medicaid patients dating back to 2004, yet they demanded recoupment for all sums paid dating back to 2004.  At the time Defendants demanded recoupment for purported overpayments for all of A Plus' patients dating back to 2004, the only documents the OHCA had from A Plus were the 16 patient files (out of a total of 127) provided on September 26, 2007, and the documents produced on October 1, 2007, in response to the agreed subpoena covering only a one-year billing period.  Moreover, if Defendants had in fact reviewed the documents produced by A Plus, there would have discovered no evidence of overpayments made with respect to *any* patient for *any* of the years for which recoupment was sought.

39.     A Plus responded on January 15, 2008, contesting the recoupment demand.  A Plus also requested reconsideration of Defendants' recoupment demand, as well as the related withholding decision.  Pursuant to this request, A Plus asked that Defendants

provide it with the information, including any review or audit report, upon which the OHCA based its decisions.

40.    On January 16, 2008, the OHCA responded that they would proceed with an informal reconsideration but refused to provide A Plus with any information beyond the list it had attached to its recoupment demand, stating A Plus' request for the information upon which the OHCA based its decisions was "beyond the reconsideration process" and "not germane" to the process.

41.    A Plus engaged an independent auditor and certified fraud examiner to review all of its patient files since 2004, including those A Plus provided to the OHCA on September 11, 2007 and October 1, 2007, and to opine as to Defendants' charges of fraud and improper billing.  The auditor reviewed approximately 127 patient files and has opined that not one reflects any fraud or improper billing.  A Plus has provided the OHCA with the auditor's final report and the documents upon which it is based.

42.    On February 7, 2008, counsel for A Plus and A Plus' auditor met with Kelly Shropshire, Justin Etchison (an auditor for the OHCA), and Chris Bergin (counsel for OHCA), to discuss the basis for the OHCA's withholding, termination, and recoupment decisions. At this meeting, the OHCA representatives stated that it would not provide A Plus with a copy of the OHCA's audit procedures.  Kelly Shropshire explained his methodology in coming to his conclusions, which was flawed at best, since he knew he did not have the documents for the entire period of the OHCA "review."

43.    A Plus has now voluntarily produced to the OHCA over 9,500 pages of documents that illustrate how A Plus properly billed.

14

44.     To date, Defendants refuse to release the Medicaid funds withheld under 42 C.F.R. § 455.23, denies that A Plus has any right to further review in this regard, refuse to reconsider termination of A Plus' Contract with the OHCA, and refuses to desist in pursuing recoupment of Medicaid monies properly paid A Plus. Defendants' abusive and improper conduct is forcing A Plus out of business and forcing hundreds of Oklahoma's poorest and youngest, many of whom live in rural parts of the State, to locate the diabetic supplies they need to stay alive.

## SECTION 1983 VIOLATIONS OF FEDERAL RIGHTS

45.     A Plus incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

## COUNT I:  Procedural Due Process Violations

46.      Defendants' actions have violated A Plus' rights to procedural due process of law under the Fourteenth Amendment to the United States Constitution.

47.     A Plus has a property interest in Medicaid reimbursement for its services.

48.     Defendants have deprived A Plus of this property interest by withholding payment, retaliating against A Plus for insisting on due process, and/or seeking recoupment of funds paid without giving A Plus proper notice and an opportunity to be heard. Further, these actions were done in violation of federal law, specifically 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396a(a)(32) requiring timely and proper Medicaid payment; 42 C.F.R. § 455.23, prohibiting withholding of Medicaid payment absent "reliable evidence" of fraud and five days notice of withholding; and 42 U.S.C. §§ 1396a(a)(3) and 1396a(a)(37), requiring fair process in denying Medicaid payment.

49.     Defendants actions were arbitrary and capricious.

## COUNT II: Substantive Due Process Violations

50.     Defendants' actions have violated A Plus' rights to substantive due process of law under the Fourteenth Amendment to the United States Constitution.

51.     Defendants' actions in charging A Plus with fraud, demanding immediate on-site production of approximately 9,500 pages worth of billing records, preventing A Plus from processing claims for pediatric diabetic supplies such that needy diabetic children were left in the lurch with life-threatening illness, retaliating against A Plus for insisting on due process by terminating the Contract and then seeking one million dollars in recoupment, representing to A Plus' patients that A Plus voluntarily terminated the Contract and telling A Plus' suppliers to go elsewhere, all without even reviewing relevant material or having any factual basis for the action is egregiously arbitrary, deliberately intended to injure A Plus, or was conscience shocking in a constitutional sense.

## COUNT III: Equal Protection Violations

52.     Defendants' actions have violated A Plus' rights to equal protection of law under the Fourteenth Amendment to the United States Constitution.

53.     Defendants make an arbitrary and unreasonable classification among Oklahoma Medicaid providers.  Defendants are discriminating against Medicaid providers of pediatric diabetic durable medical supplies in favor of other Medicaid providers, without any justification.

## COUNT IV:  Taking Without Just Compensation

54.    Defendants' actions constitute a taking without just compensation in violation of the Fifth Amendment to the United States Constitution.

55.    Defendants' Medicaid regulation of A Plus, by withholding payment owed and by terminating A Plus' Contract, constitutes unreasonable and overbroad action for which just compensation is due.

## COUNT V:  Impairment of an Obligation of Contract

56.    Defendants' actions have substantially impaired A Plus' obligations of contract in violation of Article I, § 10 of the United States Constitution.

57.    A Plus has a contractual relationship with the State and with Medicaid recipients, as third party beneficiaries, to provide durable medical supplies, including pediatric supplies, pursuant to Medicaid to needy diabetic children.  Pursuant to the OHCA's renewal, this Contract does not expire until January 31, 2011.

58.    Yet, the OHCA has made it impossible for A Plus to perform on the Contract for its intended beneficiaries since November 2007.  The OHCA locked A Plus out of the OHCA computer system, which means A Plus cannot check for Medicaid eligibility and submit claims for reimbursement for the services it is required to provide under the Contract.  Additionally, the OHCA has withheld payment from A Plus, leaving A Plus without any income to purchase and provide the needed supplies to operate under the Contract as required.

## COUNT VI: Medicaid Statutory Payment Violations

59.     Defendants' actions have violated A Plus' right to Medicaid payment owed, which "shall be furnished with reasonable promptness" under 42 U.S.C. § 1396a(a)(8).

60.     Defendants' actions have violated A Plus' right to Medicaid payment owed, which shall be made available under 42 U.S.C. § 1396a(a)(10).

61.     Defendants' actions have violated A Plus' right to payment for its Medicaid services under 42 U.S.C. § 1396a(a)(32), which provides that "no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service."

62.     Defendants' actions have violated A Plus' right to Medicaid payment withheld under 42 C.F.R. § 455.23 absent "reliable evidence" of fraud.

## COUNT VII: Medicaid Statutory Procedural Violations

63.     Defendants' actions have violated A Plus' right to a "fair hearing" prior to denial of payment or unreasonable delay of payment on a Medicaid claim under 42 U.S.C. § 1396a(a)(3).

64.     Defendants' actions have violated A Plus' right to "claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims, and (B) provide for procedures of

18

prepayment and postpayment claims review, including review of appropriate data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program" under 42 U.S.C. § 1396a(a)(37).

65.     Defendants' actions have violated A Plus' right to five days notice prior to withholding payment under 42 C.F.R. § 455.23.

## SUPPLEMENTAL STATE LAW VIOLATIONS

## COUNT VIII:  Defamation

66.     Defendants issued or caused to be issued false statements to A Plus' patients and suppliers.  Specifically, Defendants issued or caused to be issued to A Plus' suppliers false statements that A Plus' Contract was terminated, that A Plus could not afford to pay them, and that A Plus could no longer do business with them.  Defendants issued or caused to be issued false statements to A Plus' patients false statements that A Plus no longer had a contract with the OHCA and that they could no longer receive supplies from A Plus.  Most of these statements were made prior to any notice to A Plus of Defendants' intent to terminate the Contract.

67.     The statements to A Plus' suppliers were false because A Plus' Contract was not terminated at the time the statements were made and was not scheduled to be terminated by the OHCA until March 6, 2008, at the earliest, and A Plus was still capable of paying and doing business with its patients and suppliers.  The statements to A Plus' patients were false because at the time the statements were made A Plus still had a

contract with the OHCA and A Plus could still send (and indeed was obligated to send) supplies to its patients.

68.    The statements were defamatory in that they harmed A Plus by deterring third persons, namely suppliers, existing patients, and other new business and new patient from associating or dealing with A Plus.

69.    The statements are not privileged.

70.    Defendants' statements were issued recklessly, in bad faith, or intentionally, and were made outside the scope of Defendants' authority.

71.    A Plus suffered injury as a result of the defamation.

## COUNT IX:  Fraud

72.    Defendants concealed a material fact when they failed to notify A Plus that OHCA was withholding A Plus' Medicaid payment.

73.    Defendants had a duty under 42 C.F.R. § 455.23 to disclose to A Plus that the OHCA was withholding Medicaid payment five days prior to the withholding.

74.    Defendants' violated this duty and acted outside the scope of their authority in concealing the fact of withholding.

75.    Defendants gained an advantage by concealing the fact of withholding because A Plus continued to provide supplies under the Contract with Defendants.

76.    A Plus was misled to its prejudice because it continued to purchase and deliver supplies for which it received no reimbursement.

**COUNT X:  Tortious Interference With Contract and Business**

77.     A Plus has contracts and business relationships with suppliers, including Gemco Medical, and business relationships with patients.

78.     Defendants interfered with A Plus' contracts and business relationships with suppliers by telling the suppliers that A Plus' Contract with the OHCA was terminated and that A Plus could not afford to pay its suppliers and by directing suppliers to do business elsewhere.

79.     Defendants interfered with A Plus' business relationships with patients by preventing A Plus from processing claims and providing supplies, by falsely informing patients that A Plus no longer had a contract with the OHCA, and by directing patients to seek a different supplier.  Further, the interference resulted in A Plus' patients being told A Plus was being investigated for Medicaid fraud.

80.     Defendants' interference was malicious and wrongful and not justified, privileged, or excusable and was done outside the scope of Defendants' authority.

81.     A Plus suffered damage proximately caused by the interference.

**COUNT XI:  Tortious Interference With Prospective Economic Advantage**

82.     A Plus has a business relation or expectancy with suppliers and patients in that A Plus purchases and expects to purchase durable medical supplies from suppliers and provides and expects to provide these supplies to its Medicaid patients.

83.     Defendants knew of this business relation or expectancy.

84.     Defendants intentionally interfered with A Plus' business relation or expectancy with suppliers by telling suppliers that A Plus' Contract with the OHCA was

terminated and that A Plus could not afford to pay its suppliers and by directing suppliers to do business elsewhere.

85.    Defendants intentionally interfered with A Plus' business relation or expectancy with patients by preventing A Plus from processing claims and providing supplies, by falsely informing patients that A Plus no longer had a contract with the OHCA, and by directing patients to seek a different supplier.  Further, the interference resulted in A Plus' patients being told A Plus was being investigated for Medicaid fraud.

86.    Defendants' interference was conducted outside the scope of Defendants' authority.

87.    A Plus suffered damage as a result of Defendants' interference.

## COUNT XII:  Wrongful Termination

88.    A Plus and the OHCA were parties to a Contract terminable at will.

89.    Oklahoma has a clear and compelling public policy goal of providing medical assistance through the OHCA to the financially needy.  This policy is articulated in 63 Okla. St. § 5003.

90.    Defendants' actions in terminating the Contract have violated public policy by forcing one of the few, if only, Medicaid providers of certain pediatric diabetic supplies out of the Oklahoma Medicaid arena.  As a result, many needy diabetic children must scramble for a provider and/or are left completely without a provider to timely satisfy their diabetic needs in accordance with Medicaid law.  Indeed, some Medicaid recipients have been hospitalized and placed in intensive care as a result of their inability to receive needed diabetic supplies.

## COUNT XIII:  Breach of the Implied Covenant of Good Faith and Fair Dealing

91.    A Plus and the OHCA were parties to a Contract terminable at will.

92.    Defendants breached the implied covenant of good faith and fair dealing by resorting in bad faith to the termination at will clause in the Contract.  Defendants' conduct was in bad faith and thus outside the scope of their authority.

93.    Defendants' bad faith resort to termination has unfairly deprived A Plus of the fruits of its labor, specifically all Medicaid payment A Plus is owed since August 2007 for A Plus' provision of supplies, which is being withheld by Defendants, and for all future Medicaid payment A Plus reasonably expects to receive with respect to established patients.

WHEREFORE, A Plus requests that this Court (1) declare unlawful and unconstitutional under Rule 57 of the Federal Rules of Civil Procedure Defendants' actions in violating A Plus' right to procedural and substantive due process of law and equal protection of the law under the Fourteenth Amendment, unconstitutionally taking A Plus' Medicaid payment and regulating A Plus without just compensation under the Fifth Amendment, impairing A Plus' obligations of contract under Article I, § 10, and violating A Plus' federal right to Medicaid payment and fair process under 42 U.S.C. § 1396a and 42 C.F.R. § 455.23; (2) permanently enjoin Defendants from holding Medicaid funds owed to A Plus, from pursuing recoupment of funds properly paid to A Plus, and from terminating A Plus' Contract with the OHCA; (3) award A Plus its reasonable attorney fees pursuant to 42 U.S.C. § 1988(b) and costs pursuant to 28 U.S.C. § 1920; and (4) issue judgment in A Plus' favor on its state law claims, awarding it compensatory and

punitive damages together with interest, attorney fees, costs, and any other relief permitted by law and equity.

Respectfully submitted,

s/ Kevin D. Gordon
Kevin D. Gordon, OBA #10826
Rustin J. Strubhar, OBA #15850
Alison M. Howard, OBA #19835
CROWE & DUNLEVY
A Professional Corporation
20 North Broadway
Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
kevin.gordon@crowedunlevy.com
rustin.strubhar@crowedunlevy.com
alison.howard@crowedunlevy.com

-And-

Aletia Haynes Timmons, OBA #11855
TIMMONS & ASSOCIATES, L.L.C.
527 NW 23rd Street, Suite 200
Oklahoma City, Oklahoma 73103
(405) 602-5393
(405) 602-5390 (Facsimile)
atimmons@coxinet.net

**ATTORNEYS FOR PLAINTIFF APMC, INC. d/b/a A PLUS MEDICAL OF OKLAHOMA**

## VERIFICATION

STATE OF OKLAHOMA                    )
                                     ) ss.
COUNTY OF OKLAHOMA                   )


I, Michael Calloway, Owner and Authorized Agent for APMC, Inc., of lawful age, being first

duly sworn upon oath, hereby certify that I have read the foregoing Verified Complaint and that the

statements contained therein are true and correct to the best of my knowledge and belief.



_____
Michael Calloway



Subscribed and sworn to before me, a Notary Public within and for the State of Oklahoma,

on this 5ᵗʰ day of _____March_____, 2008.



_____
Notary Public


My Commission Expires:

(SEAL)

CATHY THOMAS
Notary Public
State of Oklahoma
Commission # 07003884  Expires 04/19/11